THE STATE EX REL. HARRY LEVINE ET AL. v. FRANCIS H. TRIMBLE ET AL., Judges of Kansas City Court of Appeals.—8 S. W. (2d) 927.

Division One, July 3, 1928.

*Jamison, Ostergard & Jamison* and *Frans E. Lindquist* for relators.

528

*Achtenberg, Fredman & Granoff* and *Donald H. Latshaw* for respondents.

SEDDON, C.—Original proceeding in certiorari commenced in this court, wherein relators seek the quashal of the opinion, judgment and record of the Kansas City Court of Appeals in a certain action, originally commenced in the Circuit Court of Jackson County, at Kansas City, and taken by writ of error to said Court of Appeals, entitled, Harry Levine and Guiseppe Armelio, Defendants in Error, v. Louis Shostak, Plaintiff in Error. Relators claim that said decision and opinion is in conflict with certain controlling decisions of this court. The nature, object and purpose of said action, and the conclusion of said Court of Appeals therein, are thus stated in the opinion of said court, under review in this proceeding:

"On November 24, 1925, defendant in error, Harry Levine, filed his petition against plaintiff in error in the Circuit Court of Jack-

son County, Missouri. Suit was to restrain the plaintiff in error, Louis Shostak, from operating a junk yard close to the home of defendant in error. Defendant in error Guiseppe Armelio subsequently filed an intervening petition, adopting the allegations of Levine's petition. The answer was a general denial. The case was tried before the court and a decree was rendered permanently restraining the plaintiff in error from operating a junk yard on the premises described. Motions for a new trial and in arrest of judgment were filed, which, having been duly overruled, the case is brought here.

"There is no bill of exceptions filed and the case comes here on the record proper.

"The first point is made that the motion in arrest is good by reason of the fact that the petition does not state any ground for equitable relief; that the petition sets out a public nuisance and does not allege special injury to defendant, and of a different kind than that suffered by the general public. This proposition is answered by defendant in error in two ways: First, that the petition does set out special damages to defendant in error, and again, even if it does not sufficiently allege a cause of action the attack on the petition comes too late. We will take up the first proposition.

"Plaintiff in his petition after alleging the operation of the junk yard and that it is in close proximity to the homes of defendants in error, pleads the ordinance of Kansas City and the violation thereof. He does not allege any physical invasion of the property, no loss in market value, no physical damage to the property, no loss of rents and no insurance hazard. . . .

"We think from the allegations of the petition it appears that an effort is being made to abate a nuisance purely public; that the injury to plaintiff was the same as that suffered by the entire public. We think under the rule above set out, plaintiff's petition states no cause of action. . . . We think that the petition in seeking to restrain a nuisance purely public in its character, wholly fails to allege facts showing that plaintiff has suffered or will suffer some damage peculiar to himself.

"In view of the conclusion reached, it is unnecessary to discuss the other points raised in the brief of plaintiff in error.

"The judgment is reversed."

Inasmuch as the Court of Appeals has made reference, in its opinion aforesaid, to the petition in said cause or action, which petition has been transmitted to this court by said Court of Appeals, pursuant to our writ, as a part of its record in said cause, and inasmuch as the petition in said cause was the subject-matter of the ruling of said Court of Appeals, whose opinion and judgment is grounded solely upon the insufficiency of said petition to state a cause of action, this court will therefore examine the said petition in this

original proceeding. [State ex rel. Union Biscuit Co. v. Becker (en Banc), 316 Mo. 865, 873, 293 S. W. 783, 786.] The petition, as transmitted with the record to this court by the Court of Appeals, is as follows:

"Plaintiff, for his cause of action, states that he is, and at all times hereinafter mentioned was, the owner of and seized in fee of a certain tract of land in the County of Jackson, and State of Missouri, and described as the North 136 feet of Lot six (6), in Block three (3) of Rice's Addition in the City of Kansas City, Missouri, said property being the southwest corner of Independence Avenue and Holmes Street in said city.

"That on said land is a two-story, brick building, facing on Independence Avenue, with two stores on the ground floor, and dwelling rooms above. That in the rear of said building, and facing on Holmes Street, are two brick buildings, two stories in height, used exclusively for dwelling and residence purposes, and are now and have been at all times hereinafter mentioned, fully occupied. That plaintiff and his family live in the center one of said buildings.

"That Louis Shostak is the owner and occupant of the East twenty (20) feet of the North 136 feet of Lot five (5), Block three (3) of Rice's Addition in Kansas City, Missouri, which property adjoins the property of plaintiff, on the west, said defendant's property being numbered 619 Independence Avenue, in said city.

"That for many years, to-wit, since the year 1918, the defendant has operated a junk yard on said premises, against the repeated protests and remonstrances of plaintiff, and in violation of a city ordinance of Kansas City, Missouri, No. 17134, and that defendant is now doing business as a junk dealer, on said premises, under the name of the Southwestern Junk & Paper Co.

"That the operation of said junk yard by said defendant constitutes a nuisance to plaintiff, his family, tenants and surrounding neighbors, in the following particulars, to-wit:

"That defendant purchases old, dirty rags, papers and bones, which, after having been rained on, produce an intolerable stench and odor while drying, which is dangerous to the health of the plaintiff, his family and tenants.

"The defendant purchases old stoves and other iron, articles of large size, which defendant and his employees break into smaller pieces with sledge hammers, causing a loud, disagreeable noise, din and racket, thus disturbing the peace and quiet of plaintiff, his family and tenants.

"The defendant and his employees unload, from wagons, large quantities of old, dirty paper, rags, stoves and iron, creating large quantities of dust, laden with germs, which are wafted to the doors and windows of plaintiff's buildings, and constitute a menace, and nuisance to the health of the plaintiff, his family and tenants.

"That at all hours of the day, there are wagons arriving and departing, loading and unloading junk of various kinds, accompanied with loud conversation, causing much noise, din and racket and disturbing the peace and quiet of the plaintiff, his family and tenants.

"Plaintiff further alleges that the operation of a junk yard at said location is in violation of Ordinance No. 17134 of Kansas City, Missouri, approved by the mayor of Kansas City, on August 12, 1913, which said ordinance is in words and figures as follows, to-wit: (Said ordinance is here pleaded *in haec verba*).

"Plaintiff further states that said ordinance was in full force and effect at the time that the said defendant began the operation of said junk yard, and in violation thereof, for the reason that the block, in which said junk yard is located, is laid off into lots, and a majority of the front feet on Independence Avenue, therein, is occupied by residences.

"And plaintiff alleges that the operation of a junk yard at said location is further in violation of said Ordinance No. 17134, in that said junk yard is located within 100 feet of a building used exclusively for residence purposes, to-wit, the two buildings of the plaintiff.

"Plaintiff further alleges that the defendant at all times keeps on said premises large quantities of rags and paper, old iron and other metal, bones, and old wearing apparel, all of which cause foul, noxious, unhealthy and disagreeable odors, and that the same has been declared to be a nuisance by the city of Kansas City, in Chapter 7, Section 522, of the Revised Ordinances, which reads as follows, to-wit: (Said ordinance is here pleaded *in haec verba*).

"For the foregoing reasons, plaintiff alleges that the operation of said junk yard is a menace to the health of plaintiff, his family, and his tenants, and that the same is conducted in violation of the ordinances of the City of Kansas City.

"Plaintiff further alleges that the maintenance of large quantities of rags, paper, bones, and other junk on said premises, constitutes a fire menace to plaintiff's buildings and property, and that three fires have originated in said junk yard since the beginning of its operation.

"Plaintiff further alleges that the existence of said junk yard, and the aforesaid acts of defendant, make plaintiff's property undesirable for residential purposes, and depreciates the value of plaintiff's property.

"Plaintiff alleges that the damages suffered by the nuisance hereinbefore mentioned are daily and continuous; and are incapable of computation; that the injury to plaintiff, his family and his property, are not susceptible of compensation by damages, and that he is wholly without remedy by action at law.

"Wherefore, plaintiff prays that the defendant show cause, if any he has, why he should not be restrained and enjoined from operating a junk yard at said location, and from maintaining said nuisance, and that upon final hearing, said injunction may be made permanent, and for such other and further relief, as to the court may seem meet and just."

The ordinance of Kansas City No. 17,134, approved and effective on and after August 12, 1913, and pleaded *in haec verba* in the petition, provides that "no junk shop or junk yard shall be located . . . in any block laid off in lots if the lots fronting on that part of any street forming a part of the boundary of said block are occupied by residences, and with a frontage equal to or exceeding one-half of the entire frontage of said block on such part of said street; nor shall any such junk shop or junk yard be located or used within one hundred feet of any building used exclusively for residence purposes at the time of the location, erection, construction or maintenance of such junk shop or junk yard."

It is insisted by relators that the Court of Appeals, in the rendition of its decision ruling and holding that the petition aforesaid, by reason of the allegations and averments therein, seeks to abate a nuisance which is purely and solely public in its character, wherefore such petition does not state any ground for equitable relief, and hence states no cause of action against the defendant therein named, contravenes the controlling rulings and decisions of this court announced in the cases of Tureman v. Ketterlin (Div. 1), 304 Mo. 221, 263 S. W. 202, and Street v. Marshall (en banc), 316 Mo. 698, 291 S. W. 494, as well as other controlling decisions of this court.

The Tureman case, supra, was a suit in equity to permanently enjoin the location and operation of an undertaking establishment, or mortuary, in an alleged residential community, or neighborhood, in Kansas City, upon the alleged ground that such establishment and business would constitute a private nuisance at common law, and would violate a pleaded ordinance of said city as well. The petition in the Tureman case, the substance of which is recited in our opinion in that case, is so nearly like the petition involved in the instant proceeding, in its substantive averments and allegations, that it might well be said that the petition in the instant proceeding is directly patterned after that involved in the Tureman case. The ordinance of Kansas City pleaded in the petition in the Tureman case, like the ordinance pleaded in the petition herein involved, prohibited the location, operation or maintenance of an undertaking establishment "within one hundred feet of any building used exclusively for residential purposes in Kansas City, Missouri." In the Tureman case, this division of this court, speaking through RAGLAND, J., said (304 Mo. 1. c. 228 et seq.): "An undertaking

establishment is not a nuisance *per se*. The business of preparing dead bodies for burial is not only lawful but indispensable. It may become a nuisance, however, from the manner in which it is conducted or because of the place at which it is maintained, and it is very generally held to be such when it intrudes itself into a strictly residential district. [Citing authorities.] The essential ground of such holding is that the maintenance of an undertaking establishment in a residence district tends to destroy the comfort, the well being, and the property rights of the owners of homes therein. . . . Appellants, while conceding the soundness of the general doctrine that the maintenance of an undertaking establishment in a residence district of a city constitutes a *private* nuisance, insist that the district in which they propose to set up their business is not a residence district within its purview. It is true that the district has entered upon a period of transition; no new homes are being built and business is entering here and there. Notwithstanding, it is still essentially residential in character. And on principle there can be no valid reason why its inhabitants are not entitled to the same protection in the enjoyment of their homes as that accorded home owners in residence districts generally.'' Applying the principles of law and equity announced therein, this division of this court in said case accordingly affirmed a decree and judgment enjoining the location and operation of such undertaking establishment.

The Street case, supra, was an action in equity to perpetually enjoin the defendants from using their premises in a residential district in the city of St. Louis as a ''funeral home,'' or mortuary chapel, in which dead bodies were not embalmed or otherwise prepared for burial, but which premises were devoted solely to the reception of the dead and the performance of funeral rites. The trial court entered a decree and judgment perpetually enjoining the use of the premises for such purpose, obviously upon the ground that such use constituted a *private* nuisance, which judgment was affirmed by this court, en banc. In affirming the judgment *nisi*, this court, en banc, cited with approval the ruling of this division of this court in the Tureman case, supra, and re-affirmed the principles of law and equity therein announced. In the Street case, Judge RAGLAND, again speaking for this court, en banc, approvingly quotes the following from Ross v. Butler, 19 N. J. Eq. 294: ''The law takes care that lawful and useful business shall not be put a stop to on account of every trifling or imaginary annoyance, such as may offend the taste or disturb the nerves of a fastidious or over-refined person. But, on the other hand, it does not allow any one, whatever his circumstances or conditions may be, to be driven from his home, or to be compelled to live in it in positive discomfort, although caused by a lawful and useful business, carried on in his vicinity. The maxim, *sic utere tuo*

*ut alienum non laedas* (so use your own as not to injure another's property), expresses the well-established doctrine of the law." Judge RAGLAND exhaustively reviews a multitude of decisions from other and foreign jurisdictions, from which he reaches the following expressed conclusion (316 Mo. l. c. 708, 709): "In some of the cases quoted from there was a city ordinance prohibiting the conduct or maintenance of an undertaking establishment or 'funeral home' within a residential district, but in those cases the validity of the ordinance was made to rest upon the ground that such a business when carried on in a strictly residential district constituted a *private* nuisance which it was within the competence of the municipality to abate in the exercise of the police power. The holdings in the cases cited, when carried to their logical conclusions, are to the effect that the conduct or maintenance of an undertaking establishment or 'funeral home' in a strictly residential district constitutes a nuisance as a matter of law. . . . While the undertaking business is not only lawful but indispensable, there is no justification or excuse for its seeking out and establishing itself in localities devoted exclusively to homes, where it not only materially detracts from the comfort and happiness of those who dwell there, but ruinously depreciates the values of their real estate as well."

Analyzing the petition here under review, we find that it alleges, in substance and legal intendment, that the plaintiff, and the intervener as well, are the owners and occupants, together with their respective families, of certain properties used exclusively for dwelling and residence purposes; that such properties are located within one hundred feet of defendant's junk yard; that a majority of the front feet of the city block abutting on the street on which said junk yard is located and maintained is occupied and used by residences; that said junk yard has been located and operated since, and subsequently to, the enactment of an ordinance of Kansas City which prohibits the location and operation of a junk yard in any block of said city laid off in lots if the lots fronting on that part of any street forming a part of the boundary of said block are occupied by residences, and with a frontage equal to or exceeding one-half of the entire frontage of said block on such part of said street, or within one hundred feet of any building used exclusively for residence purposes at the time of the location or maintenance of such junk yard; that the location and operation of such junk yard constitutes a nuisance to plaintiff and the intervener, their families, tenants and surrounding neighbors, in that defendant purchases, unloads and maintains upon his premises large quantities of dirty rags, papers, bones and other junk, which produce an intolerable stench and odor, create large quantities of germ-laden dust which are wafted into plaintiffs' homes and residences, and which thereby consti-

tute a menace to the health of plaintiff and intervener, their families and tenants; that the maintenance of the same constitutes a fire menace to the dwellings and buildings of plaintiff and intervener; that defendant and his employees break up old iron and articles of large size with sledge hammers, causing loud and disturbing noises, din and racket, thereby destroying the peace and quietude of plaintiff and intervener, their families and tenants; that the alleged conditions, circumstances, and acts of defendant make the respective properties of plaintiff and intervener undesirable for residential purposes, and depreciate the value of said properties; that the damages suffered by reason of such conditions, circumstances and alleged nuisance are daily and continuous, incapable of computation, and insusceptible of compensation; and, therefore, that plaintiff and intervener are without adequate and complete remedy at law.

The opinion of the Court of Appeals, constituting the record before us, discloses that evidence was heard by the Circuit Court of Jackson County and that, upon the pleadings and evidence educed upon the trial of the action, the circuit court entered a judgment and decree perpetually and permanently enjoining Shostak, the defendant therein, from maintaining and operating such junk yard; and, furthermore, that, for reasons best known to said defendant, he did not see fit to preserve for review, by bill of exceptions filed in the trial court, the evidence educed on the trial, but, on the other hand, he preferred to take the cause, by writ of error, to the Court of Appeals for review solely upon the record proper. Whether or not the evidence educed on the trial below was of such kind and character as to establish substantially, and without peradventure of doubt, the existence of the alleged conditions and circumstances, and that such conditions and circumstances in fact, constitute a nuisance peculiar to plaintiff and intervener, their respective families and tenants, we cannot say, for defendant in the action did not preserve such evidence for review. But be that as it may, the presumption must be indulged by us, and by the Court of Appeals, that the evidence *nisi* was substantial and sufficient to establish the several averments of the petition, and upon which to predicate the finding and decree of the chancellor below, provided, of course, the averments of the petition are sufficient to constitute a cause of action; this, for the sound reason that every reasonable intendment must be indulged by an appellate and reviewing court that the judgment and findings of the trial chancellor, are right and are supported by, and predicated upon, substantial evidence and the preponderant weight thereof.

We are of opinion that the petition before us for review is sufficient in its several averments to charge the existence and main-

tenance of a *private,* as distinguished from a purely public, nuisance, and that plaintiff and the intervener have suffered, or will suffer, by reason of such *private* nuisance, damages which are peculiar to themselves; and that, therefore, the petition states facts sufficient to constitute a cause of action in equity and to entitle the complainants to the equitable relief prayed therein. This court has so ruled, in effect, in the cases above cited and discussed. In ruling and holding otherwise, the decision of the Court of Appeals contravenes the controlling decisions of this court in Tureman v. Ketterlin, and in Street v. Marshall, supra.

It follows that the record of the Kansas City Court of Appeals must be quashed, and it is so ordered. *Lindsay* and *Ellison, CC.,* concur.

PER CURIAM:—The foregoing opinion by Seddon, C., is adopted as the opinion of the court. All of the judges concur.