183 So. 887

**WILLINGHAM v. STATE.**

**6 Div. 180.**

Court of Appeals of Alabama.
May 24, 1938.

Rehearing Denied June 21, 1938.

Bealle & Mize, of Tuscaloosa, for appellant.

A. A. Carmichael, Atty. Gen., and John J. Haynes, Asst. Atty. Gen., for the State.

SAMFORD, Judge.

The indictment in this case was found by the Grand Jury of Pickens County at the Spring Term of Court, 1935, and charged the defendant with the first degree murder of Thomas L. Dowdell. On October 28, 1935, the defendant was tried upon this indictment and found guilty of murder in the second degree, from which he appealed to this court, and on January 12, 1937, the judgment of conviction was reversed and the cause remanded. Willingham v. State, 27 Ala.App. 363, 172 So. 471.

On June 25, 1932, Thomas L. Dowdell, whose home was in Columbus, Miss., was seen leaving Columbus, Miss., in the direction of Aliceville, Ala., in a Chevrolet car

about 10:30 in the morning, with him in the car was another person, who was a stranger to all of the witnesses who testified for the State. The identity of Dowdell's companion, being a crucial question in this case, will be adverted to further on in this opinion.

Somebody, but who it was does not appear from this record, called attention to the fact that Dowdell was missing, and a searching party headed by E. S. Jones was organized, and on the next Thursday, after Dowdell was missed on Saturday, his body was found two or three miles west of Aliceville, Ala., about seventy yards off the road leading to Memphis Ferry in Pickens County. The body was lying on its stomach, the head turned to the right, his forearm extended, and he had all of his clothes torn off of him except his trousers and shoes; the back of his skull was crushed in, and there was a hole in the right side of his head, about an inch above his ear, that looked like a .38 pistol ball hole. The witness Jones testified that they found near the body: A door key, one pocketknife, and two little pocketbooks; that he was sure he had seen the deceased with one of the pocketbooks, that he knew Dowdell's shoes and that he recognized the shoes as the shoes of Thomas L. Dowdell. The witness Jones positively identified the body as that of Thomas L. Dowdell, the deceased.

█ This evidence was sufficient to identify the deceased, and furnish facts from which the jury could legally draw the inference that Dowdell had been killed by some person, who shot him with a .38-caliber pistol, or crushed his skull with some blunt instrument. The evidence surrounding the body rebutted any inference of suicide or self-destruction.

As to when the homicide occurred: There is no evidence other than the fact that Dowdell was last seen on Saturday, June 25, 1932, in his own Chevrolet automobile in company with some other man going in the direction of Aliceville, Ala., and that Dowdell's automobile was seen in Aliceville at a garage being driven by a man, now claimed to be this defendant, without Dowdell in the car. This would seem to warrant the jury in finding that Dowdell was murdered somewhere between Columbus, Miss., and Aliceville, Ala., on Saturday, June 25, 1932.

There is no evidence in this case tending to prove what became of the Chevrolet car, and there is no evidence of any motive on the part of this defendant to take the life of Dowdell; nor is there any evidence which tends to show that this defendant ever knew Dowdell or that he ever had any contact with him. The whole contention of the State is that this defendant left Columbus, Miss., with Dowdell in his Chevrolet car headed towards Aliceville, Ala., that the defendant arrived in Aliceville in Dowdell's car without Dowdell, and therefore was the last man seen with Dowdell while he was alive.

█ The case therefore presented, is one entirely of circumstantial evidence, and while a conviction may rest on circumstantial evidence, if sufficiently strong and cogent, such convictions should be carefully scrutinized by the judiciary. As was said by this court in Dutton v. State, 25 Ala.App. 472, 148 So. 876, 879: "Our law recognizes, and rightfully so, that convictions may rest alone upon circumstantial evidence. But our experience has taught us to know that such convictions should be carefully scrutinized by the judiciary, lest the lay mind which make up our juries may be led into deductions and inferences from proven facts, which may be grounds for suspicion, but which do not rise to that force which impels the mind to a conclusion of guilt beyond a reasonable doubt. In our fallible administration of the criminal law, it is to be regretted that some time and all too frequently the guilty escape punishment, but the conviction of an innocent man [however humble his station in life], is awful to contemplate, and therefore we must preserve every safeguard to persons charged with crime, among which is the oft repeated and emphasized maxim that no conviction must be had except upon evidence which convinces the jury beyond a reasonable doubt. No chain of circumstances which falls below this standard in any of its links will suffice to deprive a defendant of his life or liberty." The foregoing statement of the law on this subject is borne out by the opinions in the following cases: Ex parte Acree, 63 Ala. 234; Pickens v. State, 115 Ala. 42, 22 So. 551; Cannon v. State, 17 Ala.App. 82, 81 So. 860.

█ It has many times been held that circumstantial evidence is not sufficient to sustain a conviction, unless to a moral certainty it excludes every other hypothesis than that of the guilt of the accused. This rule has in no place been better stated than in the opinion written by Stone, Judge, in Ex parte Acree, supra; Cannon v. State, 17

Ala.App. 82, 81 So. 860; Jones v. State, 18 Ala.App. 116, 90 So. 135.

The only evidence tending to prove that Dowdell was murdered by the party who was with him or was seen with him in the Chevrolet automobile leaving Columbus, Miss., on June 25, 1932, is that the two men started out together on that fateful Saturday morning going towards Aliceville, Ala.; that the party now claimed to be the defendant arrived at Aliceville without Dowdell, and that some three miles from Aliceville, and on the road between Columbus and Aliceville, the dead body of Dowdell was found on the following Thursday in a woods some seventy yards from the road; that when the parties left Columbus, Dowdell had four one dollar bills, that when the party arrived at Aliceville he had four one dollar bills, that when Dowdell's body was found no money was found on it.

■ Assuming that the foregoing is sufficient evidence upon which a jury might find that Dowdell came to his death at the hands of the man who was in the automobile with him, under the rule as stated in 16 C.J. p. 542 (1028): "The proximity of accused to the place of the crime about the time of its commission, in connection with other circumstances, may establish, by a necessary or reasonable inference, the presumption of his participation in the crime," the question then arises, on the evidence, as to whether or not this defendant has been identified by the evidence beyond a reasonable doubt as the party with Dowdell on June 25, 1932. This being a material fact, it must be proven beyond a reasonable doubt, in such manner as to overcome the presumption of innocence attending the defendant during his trial.

On the question of identity, the State introduced several witnesses. The first of whom was O. P. Morgan, who testified that between 9 and 10 o'clock in the morning on June 25, 1932, he saw Dowdell and one more person in a Chevrolet car, which passed him on the road. Morgan knew Dowdell, but the other person was a stranger, without any especial distinguishing marks; that Dowdell was driving the automobile, but did not stop the car; that he did not pay very close attention to the man in the car with Dowdell. Some twelve months after this, witness went to the jail in Tuscaloosa and there he said he identified this defendant as the party who was in the car with Dowdell. Upon being asked by the defendant's counsel if he could positively identify the defendant, he said: "In my best judgment, the man I saw in jail in Tuscaloosa was this defendant." This identification in Tuscaloosa took place in the presence of the Jailer, the Sheriff, and several other parties.

The next witness offered by the State was W. A. Smith, who testified that on June 25, 1932, he sold to Dowdell some gasoline for his car, that Dowdell gave him a five dollar bill and that he gave him four one dollar bills in change; that he stood by the car with his hand on the door for about two minutes; that the defendant does not look like the man who was in the car with Dowdell, and that in his judgment, he was not the same man; that the defendant has no features that resemble the man that witness saw in the car with Dowdell.

Columbus Jones, a witness for the State, testified that on a Saturday in June, 1932, he saw Dowdell and another party pass his house, within six feet of him, and that in his judgment this defendant is the man. This witness knew Dowdell, but he did not know the party with him, and only saw him casually as the car passed him, and he saw the man no more until October, 1935. He did not know how the man was dressed; he didn't know whether or not he had on a khaki shirt; he did not know whether or not he had on a cap or a hat; but he did remember, he did not have on a coat. This witness did say, however, that Dowdell was at that time driving the car.

The next witness was Jimmie Martin, who lived at Aliceville, Ala., and was running a filling station in June, 1932. Looking at the defendant, this witness testified that to the best of his judgment he had seen him before at his filling station in Aliceville on Saturday, June 25, 1932; that he sold him a secondhand tire for Chevrolet automobile; that he had never seen the man before, and that he did not see him again until he saw him in jail in Tuscaloosa, 1935, some three years afterwards. When asked by the Solicitor: "You say this is the man you saw at Tuscaloosa?" he answered: "He is heavier and whiter than the man I saw at Tuscaloosa." This witness also testified that the man in the car had on a blue dress shirt and a brown tweed cap, which had seen lots of use. Upon being pressed on cross-examination, he said: "I won't swear that positively he is the man."

The State then introduced the testimony of the witness T. D. Noe, taken on a former

trial, who testified that he saw the defendant at Martin's Garage in Aliceville, Ala., on June 25, 1932; that he had never seen him before; that he only observed him casually while he, witness, and another were changing a tire; that he went to Tuscaloosa with some other party and that in the presence of several prisoners, the jailer, Martin, and a man by the name of Garner, some three years after he had seen him, he identified the defendant as being the man he saw at Aliceville.

The next witness for the State was Archie Lee Bell, who testified substantially, that in his judgment the defendant was the man he saw at the filling station on Saturday, June 25, 1932, with a 1928 Model Chevrolet car, but that he would not say positively that the defendant was the man he saw down there.

After the defendant's witnesses had testified, and in rebuttal, the State introduced A. G. Parsons, who testified that in his judgment he had seen the defendant at some time, either on Saturday, June 25, 1932, or the day before at Red Campbell's Camp about a mile from Columbus, Miss.

The defendant in June, 1932, was living in the northern part of Tuscaloosa County, about eight miles from Berry, Ala., and was a farmer, with a wife and family. He testified, that on June 25, 1932, at about 8 o'clock in the morning he left home and went to Berry in a truck, at Berry he went to the Bank and then to Able's Filling Station. That at the Bank he saw Phaelin Shephard, Cashier of the Bank of Berry, and transacted some business with him; that he went to Able's place, about twenty steps away, and gave him a check on the Bank of Berry for $10, dated June 25, 1932, that from there he went to Cannon's Store, where he made some purchases for himself and tenants, and leaving Cannon's Store about 11 o'clock he went home. That he got home around noon, remained there about an hour; ate his lunch and then went to Tuscaloosa with Kuykendall. Kuykendall drove to Tuscaloosa, that he (defendant) remained in Tuscaloosa practically all afternoon and went home with Kuykendall that night. This evidence, if true, presents a complete alibi; and if corroborated by other evidence in such manner as to generate in the minds of the jury a reasonable doubt as to whether or not he (defendant) was present with Dowdell on June 25, 1932, at Columbus, Miss., would entitle the defendant to a verdict of acquittal.

In corroboration of his testimony, defendant first offered Phaelin Shephard, the Cashier of the Bank of Berry in June, 1932. This witness testified that he saw the defendant on June 25, 1932, between 8 and 10 o'clock in the morning; that he was there in the bank to renew some notes with him in person; that he is positive that it was June 25, 1932, that this defendant was there. There was then introduced in evidence the check given by the defendant to H. G. Able on June 25, 1932, for $10, and paid by the Bank of Berry to Able. It appears from the testimony, that Able to whom the check was given is now dead.

The defendant then introduced Urban Walters, who was in June, 1932, a clerk in the store of Cannon and Sons, at Berry, Ala., who testified that on June 25, 1932, he sold the defendant some goods, that it was in the morning; that the defendant came to the store in a Chevrolet Truck.

The defendant then introduced as a witness, Will Kuykendall, a Former Deputy Sheriff, who testified that he saw the defendant on Saturday, June 25, 1932, at defendant's home about 12:30 o'clock in the day time; that he lived about seven miles from Berry; that at about 12:30 in the day on June 25, 1932, he went to Tuscaloosa with defendant; that they stayed around Tuscaloosa tending to various things until about night, and from there they went home together.

The foregoing presents a complete alibi for this defendant, corroborated by witnesses not even sought to be impeached.

In addition to this, the defendant introduced Monroe Ward, a practicing attorney at the Tuscaloosa Bar, who testified that when Morgan came to Tuscaloosa, for the purpose of picking out the man who was with Dowdell when he was last seen alive; that he (witness) went into the jail at that time, and was present when Morgan and his associates were there; that the Jailer brought out some eight or ten prisoners, among whom was one Wesley Moore. When Morgan was asked to pick out the man, he picked out Wesley Moore, and pointing at him said: "In my judgment that is the man." This witness, Monroe Ward, testified that Sheriff Shamblin, Mr. Parker the Jailer, and a Mr. Pate were present.

R. G. Parker, a witness for the defendant, testified that he was the Jailer, and that Morgan, in his presence, identified Wesley Moore as being the man who was last seen with Dowdell. He, also, testified that when

T. D. Noe, a State's witness, had been let into the cell with James Willingham, in order to pick out the man who was with Dowdell, he came out and told the witnesses that Willingham was not the man he had seen with Dowdell in Columbus, Miss., prior to his death.

R. L. Shamblin, the Sheriff, testified that: "I was present at the Jail several years ago when a man by the name of Morgan came to look at some prisoners, and that James Willingham and Wesley Moore and several other prisoners were in there at the time. Mr. Morgan looked these men over, and he pointed out Wesley Moore and said he looked like the man he saw with Dowdell in Columbus."

Upon being recalled, the witness Parker, who was the Jailer, testified that: "I cannot recall a man named Martin at the jail, but I remember that three men were there. I saw Noe, Morgan and a third man. I have not seen the third man here today. To the best of my judgment, this third man did not identify Willingham as being the man. In my best judgment no man, either Mr. Noe, Mr. Morgan, or Mr. Martin, who came over there identified this man Willingham as being the man."

Hubert Winters, who was an inmate of the jail at the time Morgan went there to identify this defendant, also testified that Morgan pointed out Wesley Moore as being the party last seen with Dowdell.

Frank Shackleford, who admittedly saw Dowdell and the party with him on June 25, 1932, and who went with Jones, the Deputy Sheriff, to defendant's house, testified that he saw both Dowdell and the man, and the defendant was not the man with Dowdell.

Selma Campbell testified that he was in the automobile at a time when Deputy Sheriff Jones, Mr. Tennison, and Mr. Shackleford went to the defendant's house a short time after Dowdell had been murdered, and that he heard the conversation between them, and Willingham did not tell Jones that he was in Columbus, Miss., on or about the date of Dowdell's disappearance.

Wesley Moore, testifying for the defendant, said that he was in jail at the time when the parties came up to identify the man who was with Dowdell, and that: "Morgan walked up to me and put his finger on my tie and said, that is the man."

In contradiction to State's witness Parsons that he had seen this defendant at Red Campbell's Camp about a mile from Columbus, Miss., the witness Selma Campbell, who is known as "Red" Campbell, testified that the defendant was not at Columbus on that date; that he did not have a camp near Columbus; that Willingham was never over at his place, house, or tent, at any time.

 With this testimony, and some other circumstances tending to impeach the testimony of the State's witnesses, we are of the opinion that it would be wrong and unjust to permit this verdict to stand.

On the former appeal in this case, this Court intimated the weakness of the State's case, and inferentially, at least, said that a conviction ought not to stand. We still hold to that view. The Court should have granted the defendant's motion for a new trial, and in failing to do so committed reversible error.

There are some rulings on the admission of testimony which might call for a review by this Court, but in view of the conclusion reached, the necessity is obviated.

For the error pointed out, the judgment is reversed and the cause is remanded.

Reversed and remanded.