68 So.2d 519

### ESDALE v. STATE.

### 6 Div. 557.

Supreme Court of Alabama.

Aug. 6, 1953.

Rehearing Denied Nov. 27, 1953.

Crampton Harris, Geo. S. Brown, John T. Batten, Matt H. Murphy, Sr., and Matt Murphy, Jr., all of Birmingham, for petitioner.

Si Garrett, Atty. Gen., and Wm. H. Sanders, Asst. Atty. Gen., and W. Emmett Perry, Circuit Sol., Birmingham, opposed.

SIMPSON, Justice.

This certiorari was granted to review the opinion and judgment of the Court of Appeals affirming the conviction of petitioner of embezzlement.. The jury assessed the value of the property embezzled at $65.20 and defendant was sentenced to three

years in the penitentiary. On appeal the Court of Appeals affirmed the judgment. 68 So.2d 512.

The question of import here is whether from the facts appearing in the opinion of the Court of Appeals the judgment of that court is due to be affirmed or, on the contrary, whether from the stated facts it should be adjudged that the defendant was entitled to the affirmative charge. A secondary inquiry is whether, if defendant is shown guilty, the evidence only warranted a verdict of guilty of a misdemeanor.

The court has been much aided by the briefs of counsel for the parties, as well as the oral arguments at the bar on submission on certiorari. Much has been said on both sides in seeking to interpret the opinion of the Court of Appeals with reference to the statement of facts and as to what the record would show if this court should resort to it for a complete study of the case. There seems to be some confusion in the minds of counsel with respect to this court's prerogative and duty in the premises and we will first advert to the settled rules with respect to this type of certiorari.

The rule, long established, is that this court will not revise the rulings and judgment of the Court of Appeals "on questions of fact or the application of the law to the facts as found by that court, unless the facts are stated in the opinion of the court and the law is erroneously applied to the facts stated. * * * Nor will this court issue certiorari to disturb the judgment of the Court of Appeals supported by any evidence determined by that court. * * *" Shouse v. State, 258 Ala. 499, 63 So.2d 728.

But this court is not required to write in ignorance where the meaning of the language of the opinion is left uncertain and a resort to the record would explain such language. In such a case we are permitted to look to the record for a proper explanation. Sinclair Refining Co. v. Robertson, 247 Ala. 260, 23 So.2d 872; John E. Ballenger Const. Co. v. Joe F. Walters Const. Co., 236 Ala. 546, 184 So. 273.

Also matters referred to in the opinion of the Court of Appeals by reference only, such as pleadings, instruments or documents, if pertinent to a decision of the point in question, may be examined by the reviewing court for a complete understanding of the issue involved. Ingram v. State, 66 So.2d 843.[1] John E. Ballenger Const. Co. v. Joe F. Walters Const. Co., supra (2); State ex rel. Levine v. Trimble, 320 Mo. 526, 8 S.W.2d 927; State ex rel. Western Automobile Ins. Co. v. Trimble, 297 Mo. 659, 249 S.W. 902; 14 C.J.S., Certiorari, § 157, page 301, note 80.

But the Court of Appeals is a court of last resort in matters within its jurisdiction, with its rulings subject only to a limited review by this court. So further than the foregoing this court is not permitted to pursue the record to assert its view of the propriety of the rulings of that court.

We confess at the outset the case has been perplexing, not only from the legal view but also because of the difficulty in appraising exactly the status of the purported facts set out in the opinion of the Court of Appeals. In referring to matters of fact the opinion seems to state the contentions of the parties and some testimony in support thereof and then, after a discussion of the pertinent principles of law, concludes with respect to the point considered: "Under the evidence here presented, the court properly overruled the defendant's motion to exclude the State's evidence and the request for the general affirmative charge."

That court, of course, may or may not embody in its opinion any finding or any complete statement of facts, as its wise discretion might dictate, and on original consideration of this petition it was this court's view that a sufficient finding of facts was not set forth in the opinion to warrant treating the question of the right vel non of the defendant to a directed verdict or the general affirmative charge. We still lean somewhat to that view, but out of deference to the earnest and cogent argument of

counsel, who have so diligently presented their case in opposition to the view expressed by the Court of Appeals, we have decided to treat the "contentions" referred to in the opinion as a statement of the salient facts adduced by the respective parties in the trial below and will proceed to express our view of the law as applied to that construction.

Thus treated, we deduce the following facts: Petitioner was in the bail bond business in Jefferson County and on October 15, 1949, one Dick Garth was arrested for the illegal possession of whisky. Petitioner made Garth's appearance bond and charged him a fee of $33. The opinion shows that on October 26, 1949, Garth was "convicted and fined $50 by the Jefferson County Court of Misdemeanors. The case was passed to allow Garth time to pay the fine. Garth testified he did not have the money to pay the fine but he asked defendant to take care of it and defendant said he would and told Garth to bring the money as he could." The passing of the case to allow Garth to get up the money to pay the fine appears to have been the method of doing business in that court. The court would accept no installment payments on fines, so Garth was held under the appearance bond petitioner had made for him and the case was passed as stated and Garth began to make his payments to petitioner on his fine and costs. Petitioner, according to the State's evidence, was to pay off the fine and costs when Garth had paid to him a sufficient amount. The State's evidence tends to show that under this arrangement Garth paid to petitioner in all $105.20, being $33 for the bond fee and $72.20 for the fine and costs. The last payment made by Garth to petitioner was on September 1, 1950, in the amount of $5.20, and petitioner gave Garth a "clear receipt" and told him to "go on back home and don't let the judge catch you any more."

■ But no part of this money paid by Garth was ever applied to the payment of the fine and costs and they still remain outstanding and unpaid. On the contrary, the money was used by petitioner for a totally different and unauthorized purpose. We thus interpret the opinion of the Court of Appeals to have so concluded on the State's

evidence ("contentions") set forth therein. That that conduct constituted embezzlement there can be no doubt. Abbott v. State, 27 Ala.App. 87, 167 So. 599, certiorari denied, 232 Ala. 194, 167 So. 602; Eggleston v. State, 129 Ala. 80, 84, 30 So. 582; People v. Pierce, 110 Cal.App.2d 598, 243 P.2d 585.

■ The petitioner contended that the diversion of Garth's money for another purpose was authorized; that the same was utilized to pay off a forfeiture on Garth's appearance bond in the amount of $57.50 and that he only had remaining, less his $33 bond fee to which he was entitled, the sum of $14.70 and that if he was guilty of any offense, which he denied, it would be punishable only as a misdemeanor. We cannot accord this interpretation to the facts stated in the opinion of the Court of Appeals. On the contrary, the opinion indicates that the verity of this forfeiture transaction rested in sufficient doubt to make the issue one of fact for determination of the jury, impelling the holding accordingly. As to this feature of the case the following appears: The case against Garth for which petitioner had made the appearance bond was passed several times from October 26, 1949, to January 27, 1950, when "forfeiture was taken" (sic). The amount of the forfeiture, including costs, was $57.50, which petitioner paid on March 13, 1950, "when the forfeiture was made final" (sic). When the conditional forfeiture was taken Garth had just three days prior thereto made a $10 payment to petitioner and "on the day the forfeiture was made final he had paid to appellant a total of $37" on his fine and costs. The opinion of the Court of Appeals further shows: " * * * although Dick Garth and his wife continued to visit defendant's place of business after the date of the forfeiture and continued to make payments for the purpose of paying off Dick Garth's fine, the defendant did not inform Garth of the forfeiture nor did he tell Garth his money had been used to pay the forfeiture. When the last payment of $5.20 was made on September 1, 1950, Garth was given a clear receipt and defendant [petitioner] told him to 'go on back home and don't let the Judge catch you any more.' No part of the money paid by Garth was ever applied to

the payment of the fine. The original fine and costs were never paid." Petitioner denied that he had kept Garth in ignorance of the forfeiture and that he had fully acquainted him with the status of his case and his duty in regard thereto, but this conflict in the evidence, as the others, was for resolution of the jury. The Court of Appeals so ruled.

But it is contended by petitioner that he was authorized to so apply Garth's money because when petitioner made the appearance bond Garth signed a contract agreeing, among other things, to pay in addition to the bond fee "all final forfeitures; all forfeiture costs; all fines and costs that may be assessed against the defendant, whether the same are paid by the Bail Bond Company, or whether said fines and costs are due and payable by the defendant;" etc. On the basis of this contract it is argued with much earnestness that petitioner's diversion of the money from what Garth testified was its true purpose was conclusively shown to have been innocent, without, any substantial adverse inferences pointing to the other conclusion. We do not think the matters appearing in the opinion of the Court of Appeals warrant such a construction. Taking the State's evidence in its most favorable aspect, as we must do in determining whether the defendant should have been given the general affirmative charge or a directed verdict, Alabama Digest Appeal and Error, ☞927 (7), the following adverse inferences casting suspicion on this theory appear: Just three days before conditional forfeiture was taken on January 27, 1950, Garth paid to petitioner the $10 and when final forfeiture was taken March 13, 1950, he had paid a total of $37 in addition to the bond fee; thereafter he continued to make his installment payments to the petitioner—he claimed on his fine and costs—until he was given a clear receipt September 1, 1950, and petitioner at no time mentioned anything about any forfeiture but continued to receive Garth's money on his fine and costs, which still remain unsatisfied although enough was paid in for that purpose. Then, there were five other witnesses for the State who

testified that petitioner undertook to act for them in making their bail bond in criminal cases and in receiving payments in installments to pay off fines; and instead of paying fines, the petitioner used a part of the money paid to him in paying forfeitures and costs in their respective cases and although he continued to receive payments from them after the forfeitures were taken, they were not informed of the taking of the forfeitures nor were they informed that their fines still remained unpaid and outstanding. In each of these cases the money paid to petitioner was used by him on forfeitures and costs where he or his company was bail bondsman. The testimony of these pattern witnesses strongly corroborated the State's theory that the forfeiture transaction was a scheme concocted by petitioner to be discharged from his bond obligation by having a forfeiture taken for a negligible amount, in comparison with the amount of the appearance bond, and less than the fine and costs, thereby misapplying the money received and making more out of the business than the agreed bond fee. The tendency of all this evidence afforded sufficient adverse inferences to warrant the holding of the Court of Appeals that the issue under the evidence was properly for the jury. Where the evidence is of a substantial nature or there are reasonable inferences tending to prove the material issues in the case, the defendant is not entitled to a directed verdict or the general affirmative charge. Brooks v. State, 248 Ala. 628, 29 So.2d 4; Lee v. State 246 Ala. 69, 18 So.2d 706; Brown v. State, 30 Ala. App. 5, 200 So. 637, certiorari denied, 240 Ala. 648, 200 So. 640.

But more can be said to further substantiate this conclusion. The opinion of the Court of Appeals does not show with clearness exactly the status of the forfeiture item or whether a valid judgment of forfeiture was entered against the defendant, so under the authorities, *supra,* we are permitted to look to the record to see. We find the contrary. The defendant Garth was served with no notice of the forfeiture and the alternative procedure for

the rendition of a valid judgment of forfeiture against him was not pursued. Acknowledgement of service of the scire facias against the defendant and his bondsmen was signed by one H. A. Shouse. Shouse does not appear to have been acting in any capacity as agent for Garth in acknowledging such service, and we judicially know he was "employed by the Esdale Bail Bond Company." Shouse v. State, 36 Ala. App. 614, 63 So.2d 722, 724, certiorari denied, 258 Ala. 499, 63 So.2d 728. This further corroborates the theory of the State in support of the indictment, to wit, this forfeiture business was a concocted scheme of petitioner, aided by his agent Shouse, whereby petitioner converted the entire amount paid by Garth as fine and costs to his own use, paying off the small forfeiture so concocted, thereby getting out of liability under his bond and pocketing the remainder, meanwhile keeping Garth in ignorance of the entire transaction and leaving the case against him still pending and unsettled. We do not pass judgment on whether or not that status was true. We merely say that sufficient conflict was created to take the case to the jury on that issue, as was held by the Court of Appeals.

It is argued with much cogency that the realities of the situation negate any such charge, since all of the alleged conversions by petitioner were so infinitesimally small that no sensible person would have risked the venture in view of the consequences which might entail. This, of course, is not up for our decision, but addresses itself to the enlightened discretion of the trial court in the exercise of his probationary power or some other tribunal authorized to exercise acts of clemency in that regard.

We have considered the other propositions advanced as grounds for error in the petition for certiorari and find them fully treated in the opinion of the Court of Appeals. We also regard them as untenable.

Affirmed.

All the Justices concur.

On Rehearing

PER CURIAM.

The propositions and arguments urged on rehearing find little fault with the statement of the law as contained in the Court's original opinion, but take the Court to task for misapplying the facts to the stated law.

The argument is made that the verdict of the jury finding petitioner guilty of embezzlement is inconsistent with the construed finding of facts as made by the Court of Appeals and as adopted by this Court.

Counsel insist that the phrase used in our original opinion that "a scheme concocted by petitioner" would of necessity make the crime, if any, larceny in that the intent would have had to have been formed prior to the "scheme." Jackson v. State, 249 Ala. 348, 31 So.2d 519. That case, after stating the general distinction between larceny and embezzlement, lays down the rule that where a defendant is charged in an indictment with both the crimes of larceny and embezzlement (separate counts) and there is evidence to support both counts of the indictment, a submission to the jury and the return of a general verdict of "guilty" followed by judgment thereon is not error and any further prosecution based on the evidence adduced at such trial is barred.

■ Petitioner's argument in this regard is most forcibly answered in Rogers v. State, Ala.App., 65 So.2d 525, certiorari denied, 65 So.2d 531,[1] wherein the Court of Appeals, quoting from its earlier opinion in Wall v. State, 2 Ala.App. 157, 173, 56 So. 57, said:

"'* * * Having received the money as a duly authorized agent, the act of receiving is a lawful one, and his uncommunicated intentions, formed before or at the time, to convert it would not entitle defendant in this case to an acquittal of the charge of embezzlement, if he lawfully received the money as an agent, and then unlawfully converted it. If the defendant, while in the lawful possession of the money as agent, the care and custody of it

being intrusted to him, fraudulently converts such money to his own use, he would be guilty of embezzlement within the meaning of the statute, notwithstanding the fact that he may have had a secret or uncommunicated intention of converting the money before he received it.' " [65 So.2d 528.]

If it be said that this Rogers case is somewhat of a departure from the earlier concept, it is a sound departure and in line with modern thought on the question. See 146 A.L.R. 594–596.

Then, too, the argument urged overlooks the obvious prerogative of the jury. The series of events here involved began October 15, 1949, and continued until September 1, 1950. Petitioner in his bond business made some 3500 bonds annually and we must assume that in each instance he was acting in a legal and bona fide manner. As to the Garth transaction, however, the facts could have justified a jury finding that the petitioner sometime—or any time—between October 15, 1949, and September 1, 1950, concocted the scheme to embezzle the monies of Garth.

 Counsel concedes that the testimony of the so-called pattern witnesses would be admissible to prove a pre-existing felonious intent as to the count in the indictment charging larceny, but would not be admissible as to the count charging embezzlement. This case was correctly presented to the jury on both counts and since no exception was made to the court's oral charge and no specific instruction was sought to so limit the testimony in this regard, petitioner cannot here raise the question. Then, too, the Rogers case, *supra*, holds that the pattern evidence as to petitioner's action in other similar transactions, under an embezzlement charge, would be admissible to show a course of conduct.

There is no merit in the argument that since petitioner undisputedly paid into the Jefferson County Fine and Forfeiture Fund $57.50 there could be no conversion of such a sum to his own use. Here again the argument overlooks the power of juries. From the facts appearing in the Court of Appeals' opinion, the jury was authorized to believe and evidently did believe that this payment was a material part of petitioner's scheme. At the time of the $57.50 payment by petitioner, Dick Garth had not paid the sum necessary to pay the fine in full. Garth had paid, however, $10 to defendant on January 24, 1950, just three days before the forfeiture was taken. Garth and his wife continued to visit defendant's place of business after that date and continued making payment *on his fine* until September 1, 1950. It is undisputed that petitioner had conversations with Garth subsequent to the final forfeiture, but petitioner did nothing to inform the authorities of Garth's whereabouts. No doubt petitioner could have surrendered Garth to the authorities at any time he desired, but by paying the forfeiture he was forever discharged of all obligations under the appearance bond, but still held, since he knew of Dick Garth's whereabouts, the power to surrender him to the police authorities unless he paid such sums as petitioner might deem proper under his contract with Garth.

True, Garth by virtue of the forfeiture and subsequent legal proceedings could have been made liable for the forfeiture monies paid by petitioner, but the monies Garth paid to petitioner were for the payment of his fine—not a forfeiture—and the jury was authorized to believe that in paying the forfeiture petitioner was acting primarily and solely in his own interest to discharge all his obligations under the appearance bond and that by this course of conduct he thereby converted the monies paid by Garth to his own use.

Application for rehearing overruled.

LIVINGSTON, C. J., and SIMPSON, STAKELY, GOODWYN and MERRILL, JJ., concur.

LAWSON and CLAYTON, JJ., concur in the result.