68 So.2d 512

**ESDALE v. STATE.**

**6 Div. 359.**

Court of Appeals of Alabama.

Jan. 6, 1953.

On Rehearing Feb. 17, 1953.

Crampton Harris, Birmingham, for appellant.

Si Garrett, Atty. Gen., W. Emmett Perry, Sol., Birmingham, J. W. Arbuthnot, Asst. Atty. Gen., and Marvin Cherner, Birmingham, of counsel, for the State.

PRICE, Judge.

The indictment contained three counts charging (1) embezzlement; (2) false pretense; (3) grand larceny. The false pretense count was nol prossed on motion of the Solicitor. Conviction was for embezzlement, the jury assessing the value of the property embezzled at $65.20.

This verdict operated as an acquittal as to the larceny count. Brewer v. State, 83 Ala. 113, 3 So. 816; Cowart v. State, 16 Ala.App. 119, 75 So. 711. Defendant was sentenced to the penitentiary for a term of three years.

Appellant's first insistence is that the court erred in overruling demurrer to count one of the indictment. Said count is as follows:

"The Grand Jury of said county charge that, before the finding of this indictment, J. Esdale, alias Jim Esdale, alias James Esdale, whose Christian name is to the Grand Jury otherwise unknown, being at the time, the bailee, agent, clerk, employee, servant or apprentice of Dick Garth, did embezzle or fraudulently convert to his own use, or to the use of another, or did fraudulently secrete, with the intent to con-

vert to his own use, or to the use of another sixty-five dollars and twenty cents in money, which came into his possession as such bailee, agent, clerk, employee, servant or apprentice."

The indictment was in the language of the statute, except for the addition of the word "bailee." This alleged defect was not specifically pointed out by the demurrer. Flanigan v. State, 247 Ala. 642, 25 So.2d 685; Harris v. State, 248 Ala. 389, 27 So.2d 797.

Defendant's further contention that by the use of the word "bailee" the indictment was rendered fatally defective and will not support the judgment of conviction, and the court erred in refusing the general affirmative charge, is likewise without merit.

■ Our courts hold that where an indictment consisting of one count contains charges in the alternative, with one or more of the alternatives good under the statute, and others in the alternative stating no offense, in the absence of appropriate grounds of demurrer, a general verdict will be referred to the good averments, and a judgment on conviction will be sustained. State v. Collins, 200 Ala. 503, 76 So. 445; Jackson v. State, 236 Ala. 75, 182 So. 83; Thomas v. State, 248 Ala. 415, 27 So.2d 793.

Therefore, conceding, which we do not, that the use of the word "bailee" rendered the whole count bad on demurrer, the other alternatives were good under the statute, and no objection having been made on the trial, the indictment was not rendered void and is sufficient to support the judgment of conviction.

The evidence for the State tends to show that appellant, James Esdale, owns and operates the Bail Bond Company, acting as surety on bonds for persons charged with crime.

Dick Garth was arrested on October 15, 1949, charged with illegal possession of whiskey. Appellant made his appearance bond. About two weeks later Garth was convicted and fined fifty dollars by the Jefferson County Court of Misdemeanors. The case was passed to allow Garth time to pay the fine. Garth testified he did not then have the money to pay the fine, but he asked defendant to take care of it and defendant said he would and told Garth to bring the money as he could. Receipts were introduced from the Bail Bond Company showing Garth had paid by installment $33 for the bond fee, and $72.20 which the State contends was paid to defendant for the fine and costs.

The State contends further that the case involving Garth was passed several times from October 26, 1949, to January 27, 1950, when forfeiture was taken on Garth's appearance bond. The forfeiture and costs, amounting to $57.50, were paid by the Bail Bond Company on March 13, 1950. Garth had made a payment of $10 to defendant on January 24, 1950, three days before the forfeiture was taken against him, and although Dick Garth and his wife continued to visit defendant's place of business after the date of the forfeiture and continued to make payments for the purpose of paying off Dick Garth's fine, the defendant did not inform Garth of the forfeiture nor did he tell Garth his money had been used to pay the forfeiture. When the last payment of $5.20 was made on September 1, 1950, Garth was given a clear receipt and defendant told him to "go on back home and don't let the Judge catch you any more." No part of the money paid by Garth was ever applied to the payment of the fine. The original fine and costs were never paid.

Over objections and exceptions the State was permitted to introduce six witnesses who testified that defendant undertook to act for them in receiving payments in installments and paying off fines. Instead of paying the fines, in five of said instances the defendant used a part of the money paid to him in paying forfeitures and costs, and although he continued to receive payments from them after forfeitures were taken, they were not informed of the taking of the forfeitures nor were they informed their fines were still unpaid and outstanding. One of said witnesses, Odessa Stephens, testified she had paid to defendant or his

agent a total of $100 in addition to the bond fee. Her fine and costs were paid by defendant but only amounted to $43.95.

In each instance the witness testified more money had been paid to defendant than was paid by him on forfeiture and costs.

Defendant contended he had been engaged in the bail bond business since 1931. During 1947 and up until the trial he had made about 3500 bonds each year. He made bail bonds in the various courts of Jefferson County and in other counties. About five per cent of the defendants for whom he made bond did not show up in court at all.

When the forfeiture was taken against Garth, he wrote Garth this letter:

"Your case in Judge Boner's court forfeited today. That will add $3.50 to your costs. There will be an alias warrant issue for your arrest, and additional expense will be incurred by my office because of this forfeiture. This matter is very important to you so you should pay your case off immediately, otherwise you are subject to be arrested and put back in jail at any time. You have $17.00 on deposit in our office as security on your bond. It will take $68.70 to pay your case off in full, so call at our office at once and get this matter straightened out.

"Yours truly,
"Bail Bond Company."

After the letter was sent Garth came to the office and appellant explained to him "in substance what was in the letter" and explained the difference between paying forfeiture and costs and fine and costs, and that his case was still open and he was subject to arrest. He told him what the expenses were on the forfeiture and Garth agreed to pay his case off.

On September 1, 1950, the occasion of Garth's last visit, appellant had the following conversation with him:

"I told him what the balance he owed was, which, of course, included the $25.00 that was added by reason of the forfeiture (expense). He had $15.00 in the office over and above the $57.50 that I had paid into court, which I explained to him; and it was, just he says, 'I'm going to pay $5.20. That is all I'm going to pay.'

"That of course, made about $15.00 that he paid in; he had that $10.00 up there then. I told him it was going to take $25.00 in all, less what you got in the office, about $10.00, ($5.20) and that he just kept on. I told him to give me the $5.20, and, 'I will write you a receipt in full, or anything you want. Get out of my office. Get going and don't come back; and don't let them catch you any more because I am not going to get you out of jail any more.' "

This was the last time appellant saw Garth until he saw him in court at the trial.

He further contends that he had in his employ men who worked on forfeitures and one man, who worked continually on forfeitures. These men were sent to find Garth, but did not succeed. His expense in this connection was $25.

Garth's bond fee was not paid in full until January 11th and on the day the forfeiture was taken he had only paid appellant $17 on fine and costs or forfeiture and costs and on the day the forfeiture was made final he had paid to appellant a total of $37 on fine and costs or forfeiture and costs. The appellant paid into court on that day $57.50 for forfeiture and costs. He contends that Garth was due to pay to defendant $81.75, being $57.75 for forfeiture and costs, and $25 for expenses incurred on account of the forfeiture.

Defendant introduced in evidence a contract between Dick Garth and Bail Bond Company, dated October 15, 1949, containing, among others, the following provisions:

"The undersigned further agrees, that in addition to the bond fee agreed to herein, they will pay any and all charges and expenses that are necessary for the proper carrying out of this

contract; that they will pay all final forfeitures; all forfeiture cost; all fines and costs that may be assessed against the defendant, whether the same are paid by the Bail Bond Company, or whether said fines and costs are due and payable by the defendant; that the undersigned will pay all expenses that are necessary to cause the attendance of the defendant in court; that the undersigned will pay all expenses, rewards, and other necessary expenses in apprehending the defendant, whether said defendant forfeits said bail bond or, in the judgment of the bail bond company, contemplates forfeiting said bail bond."

He also introduced contracts signed by the six witnesses who testified for the State, in the same form as that signed by Garth. He stated he had never received $65 paid by Odessa Stephens to his agent. He notified the others that forfeitures had been taken on their bonds. He also stated that none of the State's witnesses had made demand for the return of any money that might be due them.

Dick Garth admitted he signed the application for bail bond on October 15, 1949. He testified he could write his name but could not read. He contended Esdale's agreement to pay the fine and costs was made verbally on the day he was convicted. He stated he received one letter from appellant requesting that he come in and bring his payments. This letter was read to him but did not read like the letter testified to by appellant. On receipt of the letter he came in and explained why his payments were late, but defendant did not tell him anything to do.

■ Embezzlement "involves two general ingredients or elements: First, a breach of duty or trust in respect of money, property, or effects in the party's possession belonging to another; secondly, the wrongful or fraudulent appropriation thereof to his own use. There must be the actual and lawful possession or custody of the property of another by virtue of some trust, duty, agency, or employment on the part of the accused, and, while so lawfully in the possession of such property, it must be unlawfully and fraudulently converted to the use of the person so in the possession and custody thereof". Reeves v. State, 95 Ala. 31, 11 So. 158, 162; Jackson v. State, 33 Ala.App. 42, 31 So.2d 514.

■ "In embezzlement, as in most crimes, the essence of the offense, or that which makes it criminal, is the intent with which the act is done." Reeves v. State, supra, and whether or not under all circumstances of the case, the defendant acted with a fraudulent intent in using the money which came into his hands as the agent of Garth in paying the forfeiture and costs and in reimbursing himself for expenses incurred in and about the forfeiture is a question for the jury to determine, the burden being upon the State to prove beyond a reasonable doubt that such fraudulent intent existed in the mind of the defendant at the time of the alleged appropriation of the money. Walker v. State, 117 Ala. 42, 23 So. 149; Enzor v. State, 27 Ala.App. 60, 167 So. 336, certiorari denied 232 Ala. 257, 167 So. 340; Abbott v. State, 27 Ala.App. 87, 167 So. 599, certiorari denied 232 Ala. 194, 167 So. 602.

■ Under the evidence here presented, the court properly overruled the defendant's motion to exclude the State's evidence and the request for the general affirmative charge. Jackson v. State, 33 Ala.App. 42, 31 So.2d 514 and cases there cited

■ There was no error in the court's action in permitting the State to introduce evidence by the six witnesses as to transactions of defendant similar to those here involved, for the purpose of showing intent.

■ "In embezzlement generally, * * * the very confidence and trust reposed furnish the most potent means for its accomplishment and effectual concealment, so that guilt can generally be established only by reasonable inferences drawn from the general course of conduct of such officer, agent, clerk,

or servant, with respect to the subject-matter of his trust, and from all the facts and circumstances surrounding his acts, which tend to throw light upon or illustrate their nature. Ker v. People, 110 Ill. 627. And upon this principle evidence of other offenses similar to those charged in the indictment is admissible. A single act charged in an indictment, standing alone, might be susceptible of inferences of honesty of purpose, or of mere mistake, which, when viewed in the light of a long course of conduct, and of repeated acts of a similar nature, intimately and directly connected with the particular accusation, would be utterly inconsistent with such inferences, and the fraudulent intent with which the particular act was done demonstrated beyond all reasonable doubt." Reeves v. State, 95 Ala. 31, 11 So. 158, 163.

As to admissibility of evidence of other offenses for purpose of establishing intent, motive or identity of accused, see also, Sweeney v. State, 25 Ala.App. 220, 143 So. 586, 588, certiorari denied 225 Ala. 381, 143 So. 588; Wilkins v. State, 29 Ala.App. 349, 197 So. 75, 80, certiorari denied 240 Ala. 52, 197 So. 81; McKenzie v. State, 250 Ala. 178, 33 So.2d 488.

Defendant urges in brief "The pattern witnesses who testified for the State signed a contract which justified the appellant in doing what he did in those six instances. The appellant, therefore, committed no crime as to any one of the six pattern witnesses. All the testimony of such witnesses was, therefore, without any tendency to prove a similar offense and was highly prejudicial."

The court held, in the case of Wilkins v. State, supra:

"For such evidence to be admissible, it is unnecessary that the act be a crime. If the evidence is otherwise relevant as bearing upon the intent it is admissible."

When the State had concluded its examination of the first of the six witnesses the court carefully instructed the jury that this testimony was admitted solely for the purpose of determining what intent the defendant may have had in his dealings with money alleged in the indictment to have been delivered to him by Dick Garth, and stated further: "That, gentlemen will be a little more fully explained later on in the court's charge; but I want you to understand at this time that this defendant is not on trial for embezzling this man Thomas' money or for the larceny of his money; but you will consider his dealings in connection in this case here with this witness; Thomas' statement, that is his dealings with the witness, Thomas' money to determine what intent and what scienter that he had when he dealt with the money of Dick Garth."

In the oral charge the court carefully and correctly instructed the jury as to the law applicable.

■ The State's objection was properly sustained to the question to defendant as to the nature of the charge against one Jimmie Austin, whose bond defendant had testified to making. This was not in rebuttal of anything brought out by the State. Defendant was properly permitted to offer evidence in denial or explanation of the evidence offered by the State as to the six similar transactions. This effort to show what was done in entirely separate and distinct cases, other than those introduced by the State, for the purpose of proving, as stated by defense counsel, "the actual pattern, motive and intent of Mr. Esdale was and is to conduct a legitimate business under adverse conditions," called for testimony of a self serving nature and was irrelevant and inadmissible.

■ There was, likewise no error in sustaining the State's objection to the question to defendant, "Q. What is the amount of money you pay these men to work on forfeitures?" The question was not directed toward ascertaining the amount paid in either of the bond cases which were before the court.

The judgment was rendered on June 7, 1951. Defendant filed a motion for a new trial consisting of 64 grounds on July 2, 1951, within thirty days after rendition of

judgment. The motion was duly set down for hearing on July 20th, and on that date defendant presented an amendment to the original motion, containing five additional grounds, numbered 65 to 69, both inclusive. The court overruled the Solicitor's objection to the filing of the amendment. The Solicitor then filed a motion to strike the amendment, on the grounds, among others, that the amendment was filed more than thirty days after the judgment of conviction was rendered and that said grounds contain subject matter not germane to the original motion. The court overruled the motion as to three of the grounds and granted it as to grounds 68 and 69, and defendant excepted.

Grounds 68 and 69 are as follows:

"68. For that the verdict of the jury is contrary to the law in the case in that the jury was not kept together as required by law and the defendant, James Esdale, did not consent to the separation of the jury in open court, as required by law under the provisions of Title 30, Section 97(1) of the Code of Alabama of 1940.

"69. On the ground of newly discovered evidence to-wit: The jury was not during their deliberations placed under the charge of the proper officer of the court."

These grounds were correctly stricken. They were presented more than thirty days after judgment was rendered and were not germane to any ground of the original motion for a new trial. Sorsby v. Wilkerson, 206 Ala. 190, 89 So. 657; Francis v. Imperial Sanitary Laundry & Dry Cleaning Co., 241 Ala. 327, 2 So.2d 388; Ex parte Myers, 246 Ala. 460, 21 So.2d 113; Camp v. Atlantic Coast Line R. Co., 251 Ala. 184, 36 So.2d 331.

Appellant's insistence that since the trial judge does not reside in the county where trial was had and the statute provides that in such case the court shall not lose all power over the judgment until sixty days after rendition, appellant was also entitled to sixty days in which to amend his motion by adding grounds not germane to the original motion, is without merit. The statute does not extend the time for filing a motion for new trial when the judge resides outside the county. Title 13, Section 119, Code 1940.

Requested charge 7 was properly refused. In the absence of a statute to the contrary, if a criminal intent accompanies a misappropriation of funds or property held by an agent or fiduciary, the crime of embezzlement is complete, and the owner of the embezzled property need not make a demand for its return. 18 Am.Jur., Embezzlement, Sec. 23, page 583; 29 C.J.S., Embezzlement, § 11, p. 684.

Charge 8 is faulty and was properly refused.

Charge 11 was not predicated on a "belief 'from the evidence'". Bush v. State, 211 Ala. 1, 100 So. 312, 313; Wesson v. State, 251 Ala. 33, 36 So.2d 361.

All of the questions involved were for the determination of the jury, and, after a full and careful consideration of the evidence adduced, we are of the opinion it was sufficient to sustain the verdict and the trial court should not be put in error for overruling defendant's motion for a new trial, based on the ground the verdict was contrary to the preponderance of the evidence.

The judgment of the trial court is affirmed.

Affirmed.

## On Rehearing

PRICE, Judge.

At the request of counsel for appellant we set out herein the following portions of the testimony of State's witness Roscoe L. Avery, Clerk of the Jefferson County Court of Misdemeanors, on cross-examination:

"Q. Then 1–27–50 the forfeiture was taken, is that correct? A. The forfeiture was taken against the Defendant for not appearing in court.

"Q. And at that time had any money been paid into court, that is, on fine and costs? A. No, sir.

"Q. At that time did you accept any partial payments, that is, on fines in your court? A. No, sir.

\* \* \* \* \* \*

"Q. Now, Mr. Avery, has it been the practice in your court not to accept partial payments, that is, on a fine and costs? A. It had been up until the 16th of April.

"Q. The 16th of April of this year? A. This year.

"Q. Of 1951? A. Yes, sir.

\* \* \* \* \* \*

"Q. And prior to the year of 1951, let us say if a defendant came to your court with, your office, with $20.00 to be paid on a fine of $50.00 and costs, what would be your reaction to that offer of that $20.00? A. You want me to tell you what my reaction would have been?

"Q. Yes. A. I would tell him to take it to his lawyer or his bondsman, that is, if he wanted to part with it, that I could not accept it."

Application overruled.