259 So.2d 863

**J. C. FRANKLIN, alias**

**v.**

**STATE.**

**4 Div. 49.**

Court of Criminal Appeals of Alabama.

March 28, 1972.

James M. Prestwood, Andalusia, for appellant.

**654**

MacDonald Gallion, Atty. Gen., and Jasper B. Roberts, Asst. Atty. Gen., for the State.

PER CURIAM.

The indictment charged that J. C. Franklin, alias, "did buy, receive, conceal or aid in concealing one 1968 Chevrolet Impala four-door hard-top automobile, of the value of, to-wit, $3,000.00, the personal property of the Hertz Corporation, a corporation, knowing that it was stolen and not having the intent to restore it to the owner," etc.

The trial court read as a part of its oral charge to the jury Tit. 14, § 338, Code of Alabama, 1940, as recompiled 1958, which creates the statutory offense charged in the indictment. That statute contains the following, "knowing that it was stolen, or having reasonable grounds for believing that it had been stolen."

The trial court further charged in its oral charge the following:

"Now I want to discuss with you the elements of this statute and elements of this case which the State must prove beyond a reasonable doubt . . . . Then the third thing that the State must prove, they must either prove that the defendant knew the property was stolen or that the defendant had reasonable grounds to believe that the property was stolen. Either one is sufficient. . . .

"Now our courts have said that where a person is shown to be in the possession of recently stolen property, that it then becomes his responsibility to offer the jury a reasonable explanation of such possession; and in the absence of any such reasonable explanation of the defendant's possession, that lack of explanation or lack of reasonable explanation, gives rise to a factual situation from

which the jury may infer guilt on the part of the defendant."

The appellant excepted to "the court's reading of § 338 of Title 14 of the Alabama Code, which included having reasonable grounds to believe that the property was stolen."

The appellant further excepted to the court's third reference to having reasonable grounds to believe the property was stolen, and to the court's statement that either is sufficient, and meaning in this instance that the court referred to knowing it was stolen, or having reasonable grounds for believing it was stolen.

■ The appellant further excepted to the court's oral charge that "where a person is shown to be in the possession of recently stolen property, that it then becomes his responsibility . . . ." This exception was good. Reed v. State, 45 Ala.App. 617, 259 So.2d 304, 1972; Hale v. State, 45 Ala.App. 97, 225 So.2d 787; Haynes v. State, 45 Ala.App. 31, 222 So.2d 183; Odom v. State, 44 Ala.App. 534, 215 So.2d 596.

The trial court refused appellant's requested written charges Nos. 6 and 10 which are as follows:

"6. The Court charges you, there can be no conviction of this Defendant if he had no knowledge that the vehicle described in the indictment was stolen."

"10. The Court charges you, if you believe the evidence in this case, you cannot convict the Defendant."

We shall here set out the substance of the testimony of the witness for the State relating to the contentions of the appellant on this appeal.

Bill Fuller testified in substance that he was assistant city manager of the Hertz Corporation, Rent-A-Car Division, at Pensacola, Florida, which also covered Fort Walton Beach and Panama City; that the primary business was the daily rental of cars; that the car described in the indictment was purchased by Hertz on October 26, 1967; that as such employee he had said car in his possession in July, 1968; that on July 18, 1968, at 10:11 A.M., the car was rented by Hertz to Dan Buie; that Buie did not return the car; that Buie signed the rental agreement which was admitted in evidence in and by which he promised to return the car to Hertz on July 20 but the car was not returned on that date; that he next saw the car at the jail in Andalusia at least a month thereafter; that he did not know how or by whom it was carried to Andalusia; that he did not know Curtis Franklin; and that he did not see Buie in Pensacola on July 19.

Shelton Andrews testified in substance that he was a Deputy Sheriff of Covington County, Alabama; that he went to the home of Amos Perkins and that Mrs. Catherine Perkins, his wife, was at the home; that he found the car in question at that home; that they brought the car back to the jail and kept it in the custody of the sheriff for several days.

Catherine Perkins testified in substance that she bought the car from Darwin Patterson; that some of the sheriff's people came and got the car; that she paid $1,600.00 for it; that she didn't know it had been stolen; that she was in the parking lot of the Covington County Bank when she bought the car; that the defendant was not present when she bought the car; and that she had not seen the defendant in twenty years until the time she was testifying.

Darwin Patterson testified in substance that he knew Curtis Franklin; that he took part in the sale of the car to Mrs. Perkins at the Covington County Bank; that Ted Barrow was present at the sale; that he first saw the car at Lester's filling station in Andalusia and Curtis Franklin was there at the time; that the first time he saw it Curtis brought it from the station to the bank on the day of the sale; that he had not seen the car before that at

the shopping center parking lot in Andalusia and Amos Perkins was there and looked at the car; that he called Curtis and he brought the car to the lot; that when Curtis brought the car to the bank on the day of the sale Lester went to pick him up in the pickup truck; that they came back to the station before I left and they carried another car to the bank and set it in front of the car in question and it was to put the money from the sale in; that Lester went and brought appellant back; that he was at the station all that time; that he went to the bank and got the money out of the one Mrs. Perkins had put the money in the glove compartment; that he had told her to put it there; that it was $1,200.00 and he carried it to Curtis; that he had talked to Curtis about what they were going to do ahead of time; that he did not get any money; that he did not know where the car originally came from; that he understood that it was Carl Barnett's automobile; that he never saw Carl Barnett and did not know him; and that he (the witness) had been convicted for receiving the car and given a five year sentence and his case is on appeal.

Ted Barrow testified in substance that he saw Curtis Franklin and Lester Williams at the filling station and that he saw the car there; that he saw Curtis driving the car; that Darwin Patterson was with him and the two went to the bank and he saw Mrs. Perkins at the bank and the car was there at the parking lot; that he saw Darwin Patterson with $1,200.00 and did not know what he did with it and that he (the witness) did not have anything to do with the car or its sale.

R. C. Taylor testified in substance that he was a State Investigator; that he took a picture of the car behind the court house in Andalusia; that he got the identification number from the car he took the picture of; that said number was 164298S–129336; and that the picture and identification number written by him on a piece of paper were admitted in evidence.

Mrs. Perkins was recalled for further cross-examination and testified that she gave Patterson $1,600.00 and he was mistaken if he said she gave him $1,200.00.

Darwin Patterson was recalled for cross-examination and testified that Mrs. Perkins gave him $1,200.00 and she was mistaken if she said she gave him $1,600.00; that he later returned $600.00 to Mrs. Perkins which he got from Curtis; that Mrs. Perkins came to his house and said she lost the car and needed her money back; that he told Curtis and he gave him the $600.00 which he (the witness) gave to Mrs. Perkins.

The State rested and the defendant thereupon rested. The defendant did not testify and he did not call any witnesses.

The indictment before us is in Code form, Tit. 15, § 259, Code of Alabama, 1940, recompiled 1958, Form No. 91. Said indictment charged appellant with the statutory offense denounced by Tit. 14, § 338, Code, supra.

In Lindsey v. State, 23 Ala.App. 411, 128 So. 209, wherein the indictment charging the defendant with receiving stolen property was in code form and the defendant had in writing requested the court to charge, "Unless the defendant knew the cotton bought by him was stolen at the time he bought the cotton he would not be guilty," which was refused by the trial court, the Court of Appeals of Alabama said:

"On the contrary, in his oral charge the court charged the jury: 'If he knew it was stolen, or that he had reasonable grounds for believing that it had been stolen,' etc., defendant would be guilty. The charge of the court was in the exact words of the statute, and therefore was without error unless the form of indictment laid down in the Code is not broad enough to cover the crime denounced by the statute. As to this, it is now the settled law that it is sufficient to embrace every allegation required by the statute. Kibble v. State, 18 Ala.App. 453, 92 So.

910; Black v. State, 21 Ala.App. 94, 105 So. 703; Hall v. State, 21 Ala.App. 476, 109 So. 847; Jinright v. State ex rel. Attorney General, 220 Ala. 268, 125 So. 606.

"The phrases 'knowing that it has been stolen' and 'having reasonable grounds for believing that it has been stolen' are synonymous; or perhaps it would be more correct to say that one phrase qualifies the other in such sense that they mean the same thing. In a prosecution under this statute, the guilty knowledge necessary to a conviction in almost every case must rest in inference, and therefore the lawmaking power has fixed it so that if a man has reasonable grounds for believing that property has been stolen and he buys it, it is the same thing as if he had knowledge of the act itself. Hence the charges requested were bad, in that they were not broad enough to cover the whole of the statute. . . .

". . . The court's oral charge was in exact accord with the statute as it now appears."

Therefore, in that respect error does not appear in the instant case.

We now come to a consideration of whether the general charge in favor of the appellant requested in writing and refused by the court, should have been given. The answer to that question, as we see it, depends upon the effect of the evidence showing that appellant was in possession of the automobile described in the indictment. The effect of such evidence depends upon whether there was sufficient evidence to establish a vital element of the corpus delicti in this case; namely, that the automobile described in the indictment had been stolen.

In Smith v. State, 133 Ala. 145, 31 So. 806, 807, the indictment charged the defendant with larceny of certain goods. There was evidence tending to show the goods were stolen and thereafter the defendant was in possession of said goods. Our Supreme Court in that case stated:

"It must now be regarded as settled in this state that the unexplained possession of property recently stolen does not as matter of law, raise a presumption of guilt from the circumstance. Nor does the unexplained possession by one person of goods belonging to another raise the presumption that a larceny has been committed and that the possessor is a thief. Additional evidence is necessary to establish the *corpus delicti*. Unless the jury are satisfied beyond a reasonable doubt, that the offense has been committed, the unexplained recent possession of goods will not justify the conclusion that the person in whose possession they are found is the thief. Orr v. State, 107 Ala. 35, 18 So. 142; Thomas v. State, 109 Ala. 25, 19 So. 403. 'Proof of a charge, in criminal causes, involves the proof of two distinct propositions— First, that the act itself was done; and, secondly, that it was done by the person charged, and by none other—in other words, proof of the *corpus delicti* and of the identity of the prisoner.' Winslow v. State, 76 Ala. [42], 47. It is undoubtedly true that both of these essential propositions are generally for the determination of the jury, and both must be proved beyond a reasonable doubt. But where there is no proof of the *corpus delicti*,—no testimony tending in the remotest degree to prove that the property charged to have been stolen was in fact stolen, no larceny shown to have been committed,—then there can be no conviction of the prisoner, should the goods described in the indictment charged to have been stolen be found in his possession, though no explanation as to how he came by them be given by him, or, if given, is entirely unsatisfactory. In such case, the evidence is not prima facie sufficient to establish the *corpus delicti*, and the court should not allow the introduction of evidence of possession by the prisoner of the goods charged in the indictment to have been stolen. In other

words, until the state has by positive or circumstantial evidence shown a *prima facie* larceny of the goods, which is for the determination of the court, solely for the purpose of determining the admissibility of evidence tending to connect the prisoner with the commission of the offense, the prosecution is not entitled to introduce evidence of possession by defendant of the goods alleged to have been stolen. In this respect, the case would not be different from the one where an extrajudicial confession is sought to be introduced against one charged with a felony. Or where there is an entire want of evidence of the *corpus delicti* except statements made by the prisoner or unexplained possession of the goods alleged to have been stolen, the court should direct the jury to acquit the prisoner. On the other hand, if the evidence affords an inference of the larceny of the goods, then the question of its sufficiency is one for the jury, and it becomes their province to determine whether the *corpus delicti* has been proven. In such case, evidence of possession by the prisoner of goods of the same kind as those charged to have been stolen is competent, and the jury must determine upon the entire evidence, not only the question of the doing of the act, but whether committed by the defendant. Indeed the *corpus delicti* must often be proved by circumstances. In the case at hand, the owners of the goods charged to have been stolen were wholesale merchants. Garner, one of the partners, swears that meat and lard had been stolen from their storehouse. It is true he could not state definitely when these articles of merchandise were taken, and neither could he identify the meat and lard found in the possession of the defendant as his firm's property; nor could he say that particular lard and meat had been stolen from his storehouse. But he was positive that meat and lard had been stolen prior to the institution of the prosecution against this defendant. On this evidence, we are of the opinion that there was some proof tending to establish the *corpus delicti,* the weight and sufficiency of which was properly left to the jury. Furthermore, we hold that it was sufficient to authorize the admission by the court of evidence of the possession by the defendant of meat and lard of the same kind as that which Garner said was stolen, and that the evidence of its identity was sufficient to be submitted to the jury, when taken in connection with all the other evidence in the case. Note 6 on page 258 of 78 Am.Dec.

"It follows from what we have said that the defendant was not entitled to have given the general affirmative charge requested by him."

In the *Smith* case, supra, the defendant did not object to the introduction of the evidence tending to show he had possession of the goods but he did make a motion to exclude such evidence. That motion was overruled by the court and the defendant excepted. However our Supreme Court in its opinion dealt with the matter as being raised by the defendant's requested general charge and the motion of the defendant to exclude said evidence was not mentioned in said opinion.

In Sanders v. State, 167 Ala. 85, 52 So. 417, the court said:

"All the evidence offered as to the defendant's possession of the goods would have been proper and admissible if the corpus delicti had been proven, or any sufficient evidence offered which would authorize the jury to infer that the goods had been stolen by defendant, or by any other person; but, in the absence of such proof, it was all, of course, inadmissible.

"It is but a truism to say that there can be no receiving of stolen property, unless the property in question is first stolen. It is likewise true that, in order for the possession of property to be evi-

dence of a crime, the crime must be proven. . . ."

The only person shown by the evidence in this case to have had possession of the automobile involved between the appellant's possession and that of the Hertz Corporation was Buie, the lessee of the automobile. There is some evidence in this case tending to show that appellant sold the car for less than its real market value and that in making the sale he dealt with the property in a secretive manner. That evidence has a tendency to show that the defendant had a guilty connection or a guilty intent or a guilty knowledge or belief with reference to said automobile. But the question presented is was that with reference to the fact that it had been embezzled. The record is silent as to how the property was dealt with by the lessee thereof or how it got out of his possession. Under the facts in this case if Buie, the lessee, did not return the property to the owner on the expiration of the lease but converted it to his own use, he having received it lawfully, would be guilty of embezzlement and not of larceny. The defendant was indicted for receiving stolen property, not embezzled property. He could only be convicted for the offense charged. There is no evidence in this case that the property was stolen from Buie. Nor is there any evidence that he stole it.

In *Sanders,* supra, the court quoting from 2 Best on Ev. p. 751, states as follows:

" ' "I take the rule to be this," says Lord Stowell, in his judgment in Evans v. Evans: (1) "If you have a criminal fact ascertained, you may then take presumptive proof to show who did it, to fix the criminal, having then an actual corpus delicti. * * * But to take presumptions in order to swell an equivocal fact, a fact that is absolutely ambiguous in its own nature, into a criminal fact, is a mode of proceeding of a very different nature, and would, I take it, be an entire

misapplication of the doctrine of presumptions." Sir Matthews Hale, also, in his Pleas of the Crown, laid down the two following rules, which have met with deserved approbation: "I would never convict any person for stealing the goods cupusdam ignoti, merely because he would not give an account how he came by them, unless there were due proof made that a felony was committed of these goods." ' "

Tit. 14, § 144, Code of Alabama 1940, recompiled 1958, provides:

"Any person who buys or receives property knowing that it has been embezzled or fraudulently converted, or fraudulently secreted with intent to prevent the recovery thereof, or to defraud the rightful owner, shall be punished, on conviction, as if he had stolen it."

The indictment in the case before us contains no such charge. In a chapter of the Code of Alabama bearing the heading, Larceny and Like Offenses, appears Tit. 14, § 346(1), which is as follows:

"Any lessee of personal property under a written or verbal rental contract or lease who, without the consent of the lessor, sells, gives away, removes, or otherwise disposes of, conceals or converts such property so that the lessor cannot recover the same at the expiration of the lease or under the terms of the rental contract, shall, on conviction, be punished as if he had stolen such property."

This Section of the Code does not say that such a person is guilty of larceny. It uses the same language as it uses in many Sections of the Code relating to embezzlement. Said Section 346(1) denounces a "like offense" to larceny. It pronounces the intent of the Legislature to designate such an offense as embezzlement and not larceny.

The only remaining question in this connection is the matter raised in the trial court by the appellant's requesting in writing the general charge. The *Sanders* case, supra, said that the general affirmative charge should have been given for the defendant, who did move to exclude all the State's evidence relating to his possession of the goods. The Supreme Court ignored this motion and decided the case on the question of whether the general affirmative charge in favor of the defendant should have been given. We believe this to be sound law for the reason that in a case where evidence of possession of property by a defendant is introduced without objection, but because it is not shown that the property so possessed was stolen, said evidence is inadmissible. The general affirmative charge gives the trial judge an opportunity to afford a defendant a fair trial and prevent his conviction on incompetent evidence. If appellant's conviction is allowed to stand in this case, completely depending as it does upon incompetent evidence, then a rule of criminal procedure would be given supremacy over a constitutional demand that he be given a fair trial.

In the instant case the affirmative charge should have been given on the request of the appellant. Its refusal constitutes error.

We have complied with our statutory duty to review the entire record and we find no error other than that noted above.

The judgment in this cause is due to be reversed and the cause remanded.

The foregoing opinion was prepared by L. S. MOORE, Supernumerary Circuit Judge, and adopted by this court as its opinion.

Reversed and remanded.

PRICE, P. J., and CATES, ALMON and TYSON, JJ., concur.