TYSON, Judge.
Lewis Black was indicted in three counts; (1) charging the unauthorized sale or conversion of rental property, (2) grand larceny, and (3) buying, receiving or concealing stolen property in connection with a “Denncrest brand portable sewing machine” of the value of $159.00 which Black had rented for a period of one week but had failed to either return or pay further rental fees on for some eight months thereafter. At trial, the State elected to seek a conviction under the first count of the indictment, charging the conversion of rental property, § 13-3-61, Code of Alabama 1975, and the jury found Black guilty of that offense. He was sentenced by the trial court to serve one year and one day in the state penitentiary, which sentence was subsequently reduced to two years probation. Black’s motion for a new trial was overruled by the trial court, and he brings this appeal to challenge the sufficiency of the evidence on which he was convicted.
The State called Mr. Harold Tygart, the business manager of the Evenpressure Company and its subsidiary, the AA Rent Village, located in the city of Tuscaloosa. Mr. Tygart testified that, on August 26, 1977, he had rented a Denncrest portable sewing machine to the appellant, whom he knew to be the manager of the Federation of Southern Cooperatives in Epes, Alabama. According to the testimony of Mr. Tygart and the documents produced by him and received into evidence, appellant signed a standard rental contract by which he agreed to return the machine by September 1, 1977, paid the initial week’s rental fee of $7.95, and left with the machine. The witness stated that, though the stated rental period was for one week, it “could have been continued by the paying of additional rent” (R. 11) in weekly increments, thereby allowing the rentor to keep the item for an indefinite period as long as the rental fees were in fact paid. Mr. Tygart further testified that the initial week’s fee of $7.95 was all that he received from the appellant, and appellant did not thereafter make any further rental payments, not did he return the sewing machine. When the machine was not returned on September 1, as provided in the agreement, Mr. Tygart stated, his office mailed several “reminders” to appellant concerning the machine and “indicated that to continue the rental in effect it would be necessary to pay rents” (R. 19); three such reminders were sent, one each on September 1, 6 and 16, to the address that appellant had provided when he signed the rental agreement. Mr. Tygart then stated that, as no rental payments were forthcoming and the machine was not returned, he telephone appellant on November 8 at his home in Greensboro to inquire about the machine and the unpaid rent, and was “informed that he (appellant) would send the check that day to catch the rent up to date” (R. 12). The witness further testified that he did not thereafter receive either the promised check or the machine, and thus drafted a letter to appellant, dated December 8, and in which he “demand [ed] that this Sewing Machine be returned to us today and all rental charges accrued be paid” (R. 15; State’s exhibit 3). Mr. Tygart stated that he sent this letter to appellant’s home address by registered mail, and subsequently received a receipt indicating that appellant had accepted the letter on December 24.
Mr. Tygart further testified that, having received no further reply to his letter, he again telephoned appellant on January 25, 1978, and told him that the unpaid rental was exceeding “the value of the machine, *334 and ... he should return the machine and pay the past due rentals” (R. 17), to which appellant “indicated that he would send the check that day, the 25th of January.” Again, the promised check failed to materialize and after several unsuccessful attempts to telephone appellant, Mr. Tygart reached Mrs. Black on March 15, who made similar promises to pay. Finally, on May 1, 1978, Mr. Tygart signed a warrant against appellant, but he stated in his testimony that he never did receive the sewing machine.
Under cross-examination, Mr. Tygart testified that he was somewhat familiar with appellant’s occupation as manager of the Federation of Southern Cooperatives, and with that of Mrs. Black, who managed the Greene-Hale Sewing Cooperative. He also stated that appellant had not violated any company rules or policies at the time he rented the machine, and that the rental company never attempted any sort of civil action in order to recover the machine. Mr. Tygart did state that appellant made the attempt to return the machine after he had signed the warrant against appellant, but that he was told by Mr. Tygart that “it was out of my hands” (R. 28).
Earl Harless, a detective with the Tuscaloosa Police Department, testified that, on May 4, 1978, appellant had come to the police station carrying the sewing machine in a box. Detective Harless testified that he removed the machine from the box, and in doing so located a scrap of paper with the words, “Here yore damn machine. Lewis” written thereon (R. 40; State’s Exhibit 4). The officer could not state with certainty that appellant had actually written the note. Detective Harless further stated that, after advising appellant of his rights from a Miranda card,[1] he and appellant talked about the incident.
At this point the State rested and elected to seek a conviction on the first count of the indictment; appellant’s motion to exclude the State’s evidence as to this remaining count was overruled. Appellant took the stand in his own defense, and stated that he was the manager of the Federation of Southern Cooperatives in Epes, Alabama, and had been so employed since 1969. He further testified that his wife was the manager of a separate organization known as the Green-Hale Sewing Cooperative, with which he was not affiliated in any business sense. Appellant stated that he had rented the sewing machine at the AA Rent Village at the request of his wife, who was injured and could not come to Tuscaloosa to get the machine, and subsequently “turned it over to my wife who was managing the Greene-Hale Sewing Coop” in Greensboro (R. 48). Appellant further testified that he had paid the rental fee of $7.95 out of his own funds because in the past the rental company had not required any advance payments on property rented to either appellant’s concern or the Greene-Hale Coop. He also stated that he understood the machine was to be rented for one week. Appellant testified that he first became aware of the dispute with the AA Rent Village when he saw a notice from the company in the mail, but appellant’s wife told him, “ ‘Don’t worry about that ... I’ll take care of it’ ” (R. 49). He further acknowledged the telephone conversation with Harold Tygart on January 25, and stated that, after that conversation, he instructed his wife to mail a check to the rental company because it was her responsibility and he was not authorized to write checks on the Greene-Hale Coop account. Appellant testified that the next time he heard about any problems with the rental company was when he learned of the warrant signed against him by Mr. Tygart, at which point he had a “long discussion” with his wife about the situation.
Under cross-examination, appellant described his employment arrangement, stating that the cooperative managed by his wife was a separate entity from the association managed by him, although he provided training and assistance to cooperatives like the one run by his wife. He further testified that his wife’s cooperative leased several other machines, but had paid the fees for the use of those machines.
*335 Mildred Black, appellant’s wife, testified that she managed the Greene-Hale Sewing Cooperative in Greensboro, and that her husband’s employment was separate and distinct from hers. She stated that she had requested her husband to rent the sewing machine because “I was running short on equipment . . . and at that time I had knee surgery and I wasn’t doing a lot of driving” (R. 59). Mrs. Black further testified that she was informed of the expiration of the agreement by both a notice and a telephone conversation with Harold Tygart, at which time she told him that she was planning on returning the machine and paying the rent as soon as she rectified some financial difficulties. She stated that she did not want to return the machine without having the necessary funds to pay the rental fees. Mrs. Black also testified that she told her husband that she would take care of the problem since she did not want her husband using his money to pay the fees, but that at one point he told her that he would take the machine back if she did not, and he finally did so when he learned of the warrant.
Mrs. Black acknowledged under cross-examination that her husband did not return the machine until he had learned of the outstanding warrant. She also testified that she had talked to the company only in March, and did not remember any letters that her husband might have received from the company. She subsequently stated however that she knew about the letter received in December. She further outlined the financial difficulties that her business was undergoing.
On re-direct examination, Mrs. Black testified that she had done business on previous occasions with a Mr. Davis at AA Rent Village, but acknowledged that she had paid any accumulated rental fees on any items rented.
Mr. Charles Davis, president of AA Rent Village, testified that he knew the Blacks and had rented items to them on previous occasions, and that he thought that on those previous occasions, the rental had been paid after the return of the items.
On cross-examination, Mr. Davis stated that, on those occasions, he had had to telephone and send letters to the Blacks demanding the return of the items and payment for their use. Mr. Davis further stated on re-direct examination that he had difficulty with the Blacks in getting them to return the items that they had rented.
At this point, the defense rested, and appellant’s motion to exclude the State’s evidence for failure to show a prima facie case was overruled by the court.
I
Appellant phrases the issue presented on his appeal to be “whether there was proof of a criminal act by the appellant in regards the subject property and, if so, when and where did it occur” (Brief of Appellant at 14). Specifically, appellant argues that the State failed to show any acts on the part of the appellant which evidenced an intent to commit the offense for which he was convicted, and, even if the offense was shown, it was committed in a county other than Tuscaloosa County and thus venue was improper.
We find that appellant was convicted under the terms of § 13-3-61, Code of Alabama 1975, an apparently little-used section, which reads:
“Any lessee of personal property under a written or verbal rental contract or lease who, without the consent of the lessor, sells, gives away, removes or otherwise disposes of, conceals or converts such property so that the lessor cannot recover the same at the expiration of the lease or under the terms of the rental contract shall, on conviction, be punished as if he had stolen such property.
“It shall be prima facie evidence of intent to sell, give away, remove or otherwise dispose of, conceal or convert such property when the lessee fails to return such property to the lessor within seven days after notice mailed or delivered to such lessee following the expiration of the lease or rental agreement. The word ‘notice’ as used in this section shall be construed to include either notice given to *336 the person entitled thereto in person or notice given to such person in writing, making demand for return of said property. Such notice in writing shall be conclusively presumed to have been given when deposited, as registered or certified mail, in the United States mail, addressed to the lessee at the address given at the time of making of the lease or rental agreement.”
The only decision of our courts to construe this particular statute states that it “pronounces the intent of the Legislature to designate such an offense as embezzlement and not larceny.” Franklin v. State, 47 Ala.App. 653, 259 So.2d 863 (1972). The statutory offense of embezzlement involves a situation where a person has rightfully assumed possession of some item of personal property by virtue of some trust, duty, agency or other such relationship (in this instance, the rental agreement), and subsequently either converts it to his own use or fraudulently secretes the item with an intent to later convert it to his own use or to that of another. § 13-3-20, Code of Alabama 1975; Cox v. State, Ala.Cr.App., 367 So.2d 535 (1978), cert. denied, Ala., 367 So.2d 542 (1979); Hollis v. State, 51 Ala. App. 181, 283 So.2d 632 (1973); Adams v. State, 43 Ala.App. 281, 189 So.2d 354, cert. denied, 280 Ala. 707, 191 So.2d 372 (1966); Esdale v. State, 37 Ala.App. 48, 68 So.2d 512, affirmed, 260 Ala. 45, 68 So.2d 519 (1953). It is, of course, necessary that there be sufficient evidence from which a jury could be convinced beyond a reasonable doubt of all of the attendant elements of the charged offense, including intent, and, in Reeves v. State, 95 Ala. 31, 11 So. 158 (1892), we find the following discussion of intent in embezzlement cases:
“In embezzlement, as in most crimes, the essence of the offense, or that which makes it criminal, is the intent with which the act is done. But that intent may be shown, or may be conclusively presumed, from the doing of the wrongful, fraudulent, and illegal acts, which, in their necessary results, naturally produce loss or injury to the person, natural or artificial, against whom the offense is committed. ‘The law presumes that every man intends the legitimate consequences of his acts. Wrongful acts, knowingly or intentionally committed, can neither by justified nor excused on the ground of innocent intent. The color of the act determines the complexion of the intent. The intention to injury or defraud is presumed when the unlawful act which results in loss or injury is proved to have been knowingly committed.’ ”
Appellant contends that there was no evidence to support a jury’s determination that he had the requisite intent to perpetrate the offense proscribed in § 13-3-61, but we find that that section allows intent to be inferred if there has been a failure to return the rented property within seven days after receipt of notice from the renting entity. This was certainly the case here, as it is undisputed that AA Rent Village dispatched a letter by registered mail to the appellant, who admitted that he accepted it. Further, the repeated failure of the appellant to either pay the fees or return the machine, despite the continued demands of the rental company, would certainly afford the jury facts from which they could have concluded that appellant intended to deprive AA Rent Village of its machine and the rental fees properly due it. And, the question of the effect of the testimony of the Blacks about their somewhat unclear business affairs on the determination of appellant’s guilt or innocence was one to be resolved by the jury. We further see no significance in the failure of AA Rent Village to pursue some alternative means of recovering the machine, nor do we deem it necessary to explore the technicalities of whether the property was in such a position that the company could not “recover the same” within the words of § 13-3-61. We hold that there were sufficient facts adduced by the State from which the jury could have concluded, beyond a reasonable doubt, that appellant was guilty of violating the above-quoted section.
*337 A final point raised by appellant concerns the venue of his trial, in that appellant contends that, if he in fact committed any offense, he did so in Hale or some other county, but not in Tuscaloosa County where he was tried. Appellant seems to base this contention on the fact that he only rented the machine in Tuscaloosa County, and certainly had committed no wrongful act when he left that county with the sewing machine. We find this line of argument to be without merit. In § 15-2-6, Code of Alabama 1975, the following is stated:
“When an offense is committed partly in one county and partly in another or the acts or effects thereof constituting or requisite to the consummation of the offense occur in two or more counties, venue is in either county.” (Emphasis supplied)
The offense for which appellant was convicted has as an obvious and important element the existence of a “written or verbal rental contract or lease” which seemingly must exist before a defendant is subject to criminal liability under this particular section. It is undisputed that appellant entered into the rental agreement in Tuscaloosa County, and it was therefore proper to bring this prosecution in that county. Cf., Cole v. State, 37 Ala.App. 232, 67 So.2d 64, cert. denied, 259 Ala. 517, 67 So.2d 68 (1953).
The judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).